2011 VT 116

## Natalie W. Billings v. Jireh S. Billings, Sr.

[35 A.3d 1030]

No. 10-055

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed October 14, 2011

*Melvin Fink*, Ludlow, for Plaintiff-Appellant.

*Julie A. Frame* and *Robert W. Katims* of *Hoff Curtis*, Burlington, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff wife appeals the family court's final judgment order in this divorce proceeding. Wife makes the following three arguments on appeal: (1) the family court abused its discretion by granting husband's motion in limine excluding evidence of any revocable trusts or wills under which he may be a beneficiary; (2) the family court abused its discretion when it refused to include as marital property suitable for distribution two irrevocable trusts of which husband is a beneficiary; and (3) the family court abused its discretion by nullifying husband's maintenance arrearage of $8,312.74. For the reasons set forth below, we reverse and remand.

¶ 2. The material facts are undisputed. The parties were married on June 8, 1985, and they had been married for twenty-four years at the time of their final divorce hearing. The parties have three children, one of whom is a minor.

¶ 3. By agreement of the parties, wife was not regularly employed and stayed home with the children through much of the marriage. Wife is now marginally employed and has arthritis, which makes her less employable. The family court attributed to wife a current annual income capacity of $12,000. Husband is primarily employed by Gillingham and Sons, Inc., a general store in Woodstock that has been in his family for over a century. He

earns $57,864 annually from this employment. Husband is also a director, shareholder, and officer of the Woodstock Aqueduct Company, which operates a water system for Woodstock Village. At the time of divorce, husband owned two shares of the company solely and three shares jointly with wife. Each share was worth $35 and paid irregular dividends of $1.00 annually. Husband is paid a salary of $21,000 annually for his work at the Aqueduct Company.

¶ 4. The parties' financial situation is meager. One of the primary reasons for their strained finances is the decision they made to send all three children to private boarding schools once they reached the seventh grade. As a consequence of this expense, virtually no equity remains in any of the parties' jointly acquired assets, nor do they have any money saved for retirement. In addition, the parties have significant debt. The parties' relatively bleak financial situation was exacerbated during the marriage by poor business and real estate decisions.

¶ 5. At the time of divorce, the parties had few assets of great value. Their most significant asset was husband's partial interest in his parents' home, which was placed in a qualified residence trust in 1997 and which had since vested in the beneficiaries, that is, husband and his three siblings. The Town of Woodstock's assessed value of the home is $1,180,500. No other evidence of the value of this asset was presented to the family court, nor was any evidence introduced as to the value of husband's interest in the property — a one-quarter discounted interest, at best. Because of the lack of evidence, the family court concluded that it could not make a reasonable finding regarding the actual value of husband's interest in his family's property.

¶ 6. Besides husband's interest in the home, the family court found that the parties held five additional assets of value. The first of these was husband's 0.5% ownership interest in Gillingham's. The family court found there was no evidence presented as to the value of this interest. The second was husband's ownership of approximately 5.5% of the stock of a company named Swift Properties, Inc. The family court again found that the value of this small interest was unknown. The next asset was husband's ownership of approximately 0.247% of a company called Barberry Hill Corporation, an interest that husband shared jointly with his mother and that was not valued by either party at the family court. The fourth additional asset included ownership interests in

two businesses, Billings and Sons, Inc. and Bridgewater Mill, LLC, which own commercial condominium spaces in Bridgewater, Vermont. Billings and Sons was owned by both husband and wife, while husband owns 60% of Bridgewater Mill, LLC with a separate business partner. Wife provided no evidence of the value of these properties. Husband calculated that his interest in the properties was worth $723,620 against which there was a debt of $855,512, leaving a total debt of $131,892. The final remaining asset is a life insurance trust fund, funded by husband's father. It is a term life insurance fund of unknown value, and husband is one of multiple beneficiaries. The family court noted that the assets attributable to the marriage were, for the most part, gifts from the husband's family that were not specifically intended to benefit wife.

¶ 7. Besides marital assets, the parties had significant personal debt at the time of their divorce. The total balance of unsecured personal debt was approximately $170,070. Overall, the family court found that "[t]he crippling extent of the personal debt is hard to reconcile with the family income." The family court gave some weight to husband's testimony that wife had a tendency to spend excessively and to take on debt beyond their capacity to repay it. However, the family court made clear that it considered the parties' dire financial situation "a joint responsibility."

¶ 8. The family court distributed the parties' significant assets as follows. Property deemed to be of minimal or unproven value that was given to the couple by the husband's family was awarded to husband. This included: the Gillingham's stock, the interest in Swift Properties, the interest in Barberry Hill, the interest in Billings and Sons and Bridgewater Mill, LLC, and the partial interest in husband's father's life insurance trust. The family court also awarded husband the interest in his parent's home because it could not value the asset given the available evidence and because of "the limited utility of the asset, [its] current lack of ability to be sold and its familial provenance." Wife was awarded the three jointly owned shares of the Woodstock Aqueduct Company, while the two solely owned shares were awarded to husband. The court assigned approximately $125,000 of the parties' debt to husband and $45,000 to wife. In consideration of the high debt obligation assigned to husband, the family court nullified his arrearage obligation of $8,312.74, which he owed to wife under their temporary spousal maintenance order. Lastly, the family court awarded wife $5,000 held by her attorney.

¶ 9. In addition to distributing marital property, the family court also awarded wife permanent spousal maintenance. The family court arranged this maintenance as follows: $2,500 per month until April 1, 2010; $2,000 per month from April 1, 2010 until December 1, 2013; $2,700 per month from December 1, 2013 until December 1, 2016; and $3,000 per month thereafter.

¶ 10. On the first day of the parties' divorce hearing, husband submitted a motion in limine seeking to exclude evidence, whether documentary or testimonial, of any revocable trusts or wills of which he might be the beneficiary. The court granted this motion; thus in allocating marital property and awarding maintenance, the family court considered no evidence related to husband's possible opportunity for the acquisition of future assets through inheritance from wills or trusts.

¶ 11. This Court reviews family court judgments in divorce proceedings under an abuse of discretion standard. "When fashioning an equitable award, the [family] court must explain the underlying rationale for its decision, which we will not disturb absent a showing that the court abused its discretion." *Wade v. Wade*, 2005 VT 72, ¶ 13, 178 Vt. 189, 878 A.2d 303 (citation omitted). In general, trial courts have "wide discretion within the limits of 15 V.S.A. § 751 . . . in formulating awards of property upon divorce." *Atwood v. Atwood*, 143 Vt. 298, 300, 465 A.2d 1354, 1355 (1983). The family court's factual findings stand on appeal if supported by any credible evidence in the record, and we will uphold the court's legal conclusions if supported by the findings. *Wade*, 2005 VT 72, ¶ 9.

¶ 12. On appeal, wife first argues the family court abused its discretion by granting husband's motion in limine because this decision improperly excluded consideration of husband's beneficial interest in any revocable trust as marital property and precluded the court's consideration of evidence that might indicate each party's opportunity for future acquisition of assets and income pursuant to 15 V.S.A. § 751(b)(8). She next contends that the family court abused its discretion by refusing to include as marital property suitable for distribution husband's interest in his parents' qualified personal residence trust and in his father's life insurance trust. Finally, wife claims that the family court abused its discretion by nullifying husband's maintenance arrearage of $8,312.74. We disagree that the family court abused its discretion

in distributing the irrevocable trusts and in nullifying the maintenance arrearages; however, we reverse and remand the case on the issue of the court's grant of husband's motion in limine, and all monetary awards must be reconsidered in light of this decision.

 ¶ 13. We first address wife's claim that the family court abused its discretion by granting husband's motion in limine. We agree with husband that any interest he has as beneficiary under a will or revocable trust is not marital property if the testator or settlor is still alive. We agree, however, with wife that such a beneficial interest can be considered in allocating marital property between the parties if it creates an "opportunity . . . for future acquisition of capital assets and income" under 15 V.S.A. § 751(b)(8).

 ¶ 14. As an initial matter, husband argues that objections to the grant of the motion in limine were not preserved because wife failed to raise the issue in the questioning of husband's parents. We have never ruled that in all circumstances a party against whom a motion in limine has been granted must further contest the decision by seeking to admit the excluded evidence at trial. As we held in *State v. Blair*:

> The grant of the motion in limine was a ruling excluding evidence and thus is governed by V.R.E. 103(a)(2). That rule states that error can not be predicated on a ruling that excludes evidence "unless a substantial right of the party is affected" and in the case of a ruling excluding evidence, "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

155 Vt. 271, 277, 583 A.2d 591, 594 (1990). We allowed review of the limine ruling in *Blair* because it met the standard of V.R.E. 103(a)(2). *Id.* In this case, the standards of V.R.E. 103(a)(2) are also met. Wife's right to obtain evidence to support her position on equitable division of the property was affected. The evidence was specifically identified, and the court was aware of its substance. The evidence from husband's parents came immediately after the ruling so that rearguing the same evidentiary point would have accomplished no purpose. We see no reason to require an empty formality. The whole reason for a motion in limine is to resolve disputed evidentiary issues before trial. Requiring a

second argument over admissibility at trial would defeat that purpose.

¶ 15. Husband argues that attempting to admit the evidence at trial is required by our decision in *State v. Carrasquillo*, in which we held, under the specific circumstances of that case, that renewal at trial was required. 173 Vt. 557, 559, 795 A.2d 1141, 1144 (2002) (mem.). *Carrasquillo* involved the special circumstance where the trial court grants a motion in limine in general terms, such that the scope must be fleshed out by specific rulings on questions at trial. Following the general ruling but still prior to trial, the party against whom the motion was granted posed hypothetical questions to the trial court and asked the court to rule on whether the questions would be allowed under the limine ruling. The party alleged error in the trial court's responses. Relying on our decision in *State v. Koveos*, 169 Vt. 62, 71, 732 A.2d 722, 727-28 (1999), we held in *Carrasquillo* that defendant could not ground error in rulings on hypothetical questions without actually asking those questions at trial and obtaining a formal ruling. 173 Vt. at 559, 795 A.2d at 1144.

¶ 16. The difference between this case and *Carrasquillo* is apparent from our recent decision in *State v. Memoli*, 2011 VT 15, ¶ 17, 189 Vt. 237, 18 A.3d 567. There, the defendant in a sexual assault case sought to admit evidence of the victim's prior and subsequent drug use to support evidence that the victim traded sex for drugs during the night of the sexual assault, and, therefore, the sexual activity was consensual. In response to the State's motion in limine, the court excluded the evidence, and the defendant abandoned a sex-for-drugs defense. We held that the defendant's failure to renew the evidentiary issue at trial was not a waiver because the court's ruling changed the defense upon which the defendant relied. We added that "there was no invitation from the court that the matter could be revisited at trial." *Id.* We reversed the conviction on the ground that the in limine ruling was error.

¶ 17. Husband also argues that wife waived the issue because husband's father and mother refused to answer questions about revocable trusts and wills during their depositions and wife never moved for a court order compelling them to answer. Husband never made this argument below, even though it was husband, not wife, who sought a ruling on the admissibility of the

evidence in the trial court. We have never held that a party loses the right to introduce relevant evidence because the party failed to pursue the evidence in discovery. There is no merit to husband's waiver argument.

¶ 18. Turning to the content of the motion in limine, we first hold that the family court determined correctly that any revocable trusts or wills under which husband may be a beneficiary are *not* marital property to be distributed by the court. Under 15 V.S.A. § 751(a), "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property, whether in the names of the husband, the wife, both parties, or a nominee, shall be immaterial . . . ." Although we have not addressed the issue, the near unanimous holdings around the country are that a beneficiary's interest under a will is not property before the death of the testator, but instead is only an expectancy that is not subject to the jurisdiction of the family court. See 2 B. Turner, Equitable Division of Property § 6:91, at 476 (3d ed. 2005); see also *Krause v. Krause*, 387 A.2d 548, 550 (Conn. 1978) (" 'Expectancy' is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property . . . .") (quoting *Johnson v. Breeding*, 190 S.W. 545, 545 (Tenn. 1916)). We adopt these holdings as the proper interpretation of § 751(a).

¶ 19. Wife does not appear to contest this result as to interests created by will but argues that interests created by revocable trusts should be treated differently. We disagree. In 2009, Vermont adopted a version of the Uniform Trust Code as Title 14A of Vermont Statutes Annotated. See 14A V.S.A. § 101 (title is known as the Vermont Trust Code); § 102, Official Comment (source is the Uniform Trust Code). The Official Comment to § 601 of the Uniform Trust Code notes that "[t]he revocable trust is used primarily as a will substitute, with its key provision being the determination of the persons to receive the trust property upon the settlor's death." See also Restatement (Third) of Trusts § 25 cmt. a (2003) (interests in testamentary methods of distribution and revocable trusts are the same "because both the testator and the settlor have retained their complete control over the property that is subject to the will or trust instrument"); *In re Goodlander*, 20 A.3d 199, 203-06 (N.H.

2011) (relying on Uniform Trust Code, as adopted in New Hampshire, to hold that trust interest is not marital property). As many courts have now held, there is no reason to distinguish between will interests and revocable trust interests as long as the testator or settlor is alive. See generally *In re Marriage of Githens*, 204 P.3d 835, 843 (Or. Ct. App. 2009) ("[W]hile there may be a formal distinction between an interest under a will and a beneficial interest under a revocable trust, the practical differences are nonexistent."). Thus, we agree with the family court that husband's interest in a revocable trust is not marital property during the life of the settlor.[1]

¶ 20. While we agree with husband that his beneficial interest in the revocable trust is not marital property, that determination does not end the issues before us. Wife argues that the presence of a revocable trust, even if not creating marital property, may be considered in arriving at an equitable distribution of the marital property. Wife relies for this position on 15 V.S.A. § 751(b)(8), which provides, "[i]n making a property settlement the court may consider all relevant factors, including but not limited to: . . . (8) the opportunity of each [party] for future acquisition of capital assets and income." Wife argues that the revocable trust is, at a minimum, an opportunity for husband to acquire capital assets in the future and the court erred in granting the motion in limine that prevented her from introducing evidence of that opportunity.

¶ 21. Other jurisdictions are split on whether the expectation that a spouse may receive assets by testamentary devise or revocable trust[2] can be considered in determining the equitable division of property. See 2 Turner, *supra*, § 6:91, at 477-78. The decisions from states with statutory language on division of property similar to that of Vermont[3] are similarly split. See, e.g., *Williams v. Massa*, 728 N.E.2d 932, 941 (Mass. 2000) ("The judge

---

[1] Although we have not decided the question directly, we note that in *Chilkott v. Chilkott*, 158 Vt. 193, 197, 607 A.2d 883, 885 (1992), a case in which we found an interest in an irrevocable trust to be marital property, we distinguished that situation from "a situation where the trust was ambulatory, making husband's interest a 'bare hope of succession to the property of another.'" (citation omitted). Our decision in this case is consistent with that observation.

[2] Although wife has focused on husband's interest in a revocable trust, we see no reason to distinguish between a revocable trust interest and a testamentary interest.

[3] The Vermont language is based on § 307 of the Uniform Marriage and Divorce Act.

correctly considered these expectancies under the § 34 criterion of 'opportunity of each for future acquisition of capital assets and income' in determining what disposition to make of the property that was subject to division."); *Rubin v. Rubin*, 527 A.2d 1184, 1190-91 (Conn. 1987) ("[W]e approve the view of those courts that have held evidence of a possible future inheritance to be inadmissible for the purpose of a property assignment or alimony award. . . . To base a division of property, which is not ordinarily subject to modification, upon the possibility of a future inheritance might often prove to be unfair in the light of subsequent events."); *In re Marriage of Beadle*, 1998 MT 225, ¶ 43, 968 P.2d 698 (holding that "a spouse's possible inheritance is never properly included in the marital estate nor considered in dividing the marital estate"). The decisions that exclude this evidence generally rely on the fact that the spouse has no marital property interest in the assets in the will or trust or that it is speculative whether the inheritance will materialize. The contrary argument is that the "statutes speak in terms of *likelihood* and not certainty" and "[w]here the beneficiary remains on generally good relations with the donor, and particularly where the donor is a parent or other close family member, it is a rare case where the expected gift or inheritance will completely fail to yield any benefits at all." 2 Turner, *supra*, § 6.91, at 478.

¶ 22. We have never addressed this issue directly, but we recently considered the handling of a future inheritance in *Mizzi v. Mizzi*, 2005 VT 120, 179 Vt. 555, 889 A.2d 753 (mem.). In *Mizzi*, the wife expected to receive a substantial inheritance from her mother, and the court considered it in distributing marital assets pursuant to § 751(b)(8), but did not change the percentage distribution because husband also expected to acquire future assets through his greater income. On the husband's appeal, we affirmed the distribution observing that the weight to be accorded the inheritance was affected by uncertainty over its timing and amount and that "it was not an abuse of discretion for the court to determine that neither party had a greater opportunity for future earnings." *Id.* ¶ 9. We note that many of our decisions involve cases in which § 751(b)(8) is used in determining an equitable distribution of property. See *St. Marie v. St. Marie*, No. 2009-243, 2010 WL 716116 (Vt. Feb. 25, 2010) (unpub. mem.); *Furney v. Furney*, No. 2006-284, 2007 WL 5319744 (Vt. Mar. 28,

2007) (unpub. mem.); *Richards v. Richards*, No. 2005-053, 2005 WL 6159485 (Vt. Mar. 29, 2006) (unpub. mem.).[4]

■■ ■■ ¶ 23. We conclude that consideration of likely receipt of future inheritances and trust assets or proceeds may be considered under § 751(b)(8). The statute does not distinguish between different opportunities based on the means by which the opportunity is created. See B. Turner, *Future Gifts and Inheritances as a Factor in Dividing Marital Property*, 18 No. 10 Divorce Litig. 165 (2006). Necessarily, future assets to be considered under that subsection are not marital property; otherwise they would be distributed between the parties. Thus, the fact that the beneficiary interest is merely an expectancy during the life of the testator or settlor prevents that interest from being marital property but does not prevent it from being considered under § 751(b)(8). Indeed, because a property distribution cannot be modified where a change of circumstances occurs, it is necessary to have a grasp of predicted future circumstances to bring about a fair result. See *Krize v. Krize*, 145 P.3d 481, 489 (Alaska 2006).

■■ ■■ ¶ 24. Depending upon the circumstances, the court can find that future receipt is likely — that is, it creates a real opportunity to acquire assets in the future. The circumstances here, that the settlors of the revocable trust are husband's parents, make the likelihood stronger. See *id.* at 490 (requiring that the settlor be an immediate family member). As in *Mizzi*, however, uncertainty over the timing and amount of these future assets can affect how much weight to place on their likely availability. Consideration under § 751(b)(8) does not mean that the distribution of marital property will change as a result. We conclude, however, that the family court improperly granted the motion in limine that preemptively excluded evidence about the extent of husband's potential interest in revocable trusts and wills.[5]

---

[4] These citations are to three-justice decisions because many of our appeals from divorce judgments raising issues with respect to property distributions are considered by a three-justice panel. We do not cite these decisions as precedent, but instead to show the extent that § 751(b)(8) is relied upon in property distribution decisions. These decisions are available at http://www.vermontjudiciary.org/d-upeo/upeo.aspx.

[5] This is not a holding that the terms of wills and revocable trusts must be made public when they are introduced in evidence. They may be subject to sealing

■■■ ¶ 25. The dissent argues that there is a difference between types of expectancies, and that the Legislature provided for consideration of certain types of expectancies and not others. There is nothing in the statutory language to support the dissent's distinction — the issue is whether the spouse has an "opportunity" for future acquisition of assets and income, not the source of that opportunity.[6] More importantly, the dissent is raising a distinction without a difference. The dissent's argument is that the future assets or income from "a successful business, vested pension, professional degree or training, skilled work experience, and the like" lie within the application and control of the spouse and assets or income from an inheritance do not. In fact, in both circumstances, outside forces — employers, the state of the economy, the whims of consumers, the relationship of the spouse and the testator or settlor, and the like — have a large impact on the probability that an expectancy will be realized. Whether an inheritance or a trust is revoked often will depend on the conduct of the potential beneficiary. See M. Sussman et al., *The Family and Inheritance* 97-102 (1970) (major statistical examination of family inheritance practices finding that most wills including adult children follow intestacy patterns and that deviations from that pattern almost always depend on the conduct of the children toward the parents, particularly the provision of care); A. Hirsch, *Default Rules in Inheritance Law: A Problem in Search of its Context*, 73 Fordham L. Rev. 1031, 1086 (2004) ("A raft of studies all indicate that, by a wide margin, most benefactors approve [of intestacy patterns], irrespective of their children's relative needs or means (or gender)."); cf. G. Eliot, *Middlemarch* 349 (Oxford Univ. Press 1996) (1852) ("Was inheritance a question of liking or

---

pursuant to the Rules for Public Access to Court Records Rule 7(a) to protect the privacy interests of the testator(s) or settlor(s).

[6] The dissent relies heavily on the reasoning in *Rubin v. Rubin*, 527 A.2d 1184 (Conn. 1987), which held that a possible future inheritance could not be considered in the division of marital property because it was a mere expectancy. Although *Rubin* has not been overruled, the Connecticut Supreme Court has substantially backed off its framework. See *Czarzasty v. Czarzasty*, 922 A.2d 272, 276-78 (Conn. App. Ct. 2007) (extensively documenting the trajectory of relevant Connecticut cases and concluding that "the court seems to have recast the analysis used . . . to a more probabilistic assessment untethered to the existence of a presently existing enforceable right"); see also *Bender v. Bender*, 785 A.2d 197, 208 (Conn. 2001) (holding that "pension benefits and trust interests, *whether vested or not,*" could be considered in a divorce settlement).

of responsibility? All the energy of Dorothea's nature went on the side of responsibility — the fulfilment of claims founded on our own deeds . . . ."). In general, the dissent is attempting to distinguish future earnings for which a party would be in some metaphysical sense responsible from those that are merely fortuitous. This is a notoriously problematic line to draw, see J. Rawls, *A Theory of Justice* 73-75 (1971), and one that we see no reason to read into statutory language that on its face is only probabilistic.

¶ 26. Our reversal on the issue of the motion in limine requires that the family court's property distribution decision be reconsidered. Because the property distribution and maintenance decisions are interrelated, we similarly remand the maintenance decision for reconsideration. See *Kanaan v. Kanaan*, 163 Vt. 402, 415, 659 A.2d 128, 137 (1995).

¶ 27. Wife has challenged two additional parts of the court order — the valuation and distribution of the irrevocable trust interests and the cancellation of the maintenance arrearage. The first challenge raises primarily a question of law that will be present even if the property distribution is modified. We address that issue of law. The second challenge, involving the maintenance arrearage, is to a part of the property distribution that may be changed. Nevertheless, we address the legal issue raised for guidance to the trial court on remand.

¶ 28. Wife argues that the family court improperly refused to include as marital property suitable for distribution the two irrevocable trusts of which husband is a beneficiary. These two trusts include husband's parents' qualified personal residence trust and his father's life insurance trust, both of which the family court awarded to husband. We agree with wife that husband's beneficial interest in the trusts is marital property. See 15 V.S.A. § 751(a) ("All property *owned by either or both of the parties* . . . shall be subject to the jurisdiction of the court." (emphasis added)); *Chilkott*, 158 Vt. at 196, 607 A.2d at 885. This is true even if title to the interest is exclusively in the name of the husband. 15 V.S.A. § 751(a).

¶ 29. We do not agree, however, that the family court concluded they were not marital property. In its findings of fact, the family court discussed husband's interest in both trusts after the general statement that "[t]he parties have few assets of

significant value." That the family court discussed the interests in these trusts as being husband's interests does not indicate that it did not consider them part of the marital estate under 15 V.S.A. § 751(a); it merely means that the court correctly understood that husband, and not wife, was the named beneficiary of these trusts. Neither does the fact that the family court ultimately decided to distribute the interest in these trusts to husband indicate that the court determined the trusts were not part of the marital estate. This distribution merely means that the family court determined it was equitable to allocate these assets to husband as part of the division of the marital estate.

■■ ■■ ¶ 30. In distributing the two irrevocable trust assets, the family court determined that it had insufficient evidence to determine the value of either interest. Wife claims that the family court's conclusion was error under our decision in *Chilkott*, where we determined that the husband's interest in an irrevocable trust was not so remote that it had no "ascertainable present value." 158 Vt. at 196, 607 A.2d at 885. Indeed, it is the difference between the circumstances in this case, and those in *Chilkott*, that shows why the family court decision is correct. In *Chilkott*, the question was whether the superior court could consider and value husband's interest in an irrevocable trust. The impediment was that husband's eighty-seven-year-old mother received the trust income during her life and the trustee could invade the principal for mother's health, maintenance, and welfare. We upheld the admission of and reliance on the evidence of wife's valuation expert who "testified that the same principles apply to valuing trusts as to valuing pensions. We have held that the use of such an expert is a proper method to determine the value of a pension in evaluating a spouse's opportunity for the future acquisition of capital assets and income." *Id.* at 197, 607 A.2d at 885. Here, despite a pretrial order awarding her $5,000 from husband for this purpose, wife failed to produce a valuation expert for the two trusts in issue, leaving the court without adequate evidence to arrive at valuations. It was within the court's discretion to determine that it lacked the requisite evidence to accurately determine the value of husband's interests in the two trusts, and it was within the court's discretion to distribute the two irrevocable trusts to husband.

■■ ■■ ¶ 31. Lastly, we address wife's contention that the family court abused its discretion when it nullified husband's

maintenance arrearage of $8,312.74. Wife claims that the family court's nullification was error for two reasons — the arrearage was the product of husband's "flagrant disregard" for a court order, and the arrearage placed wife in severe financial hardship. Despite wife's claims, the court specifically noted that the arrearage was "in consideration of the high debt obligation assigned to [husband], and in consideration of his financial contribution to the outstanding obligations." This Court has allowed the family court to allocate debt between divorcing parties. See *Sullivan v. Sullivan*, 137 Vt. 544, 546, 409 A.2d 561, 562 (1979) (finding no abuse of discretion where court ordered husband to relieve wife of liability on note signed by both parties during marriage). Furthermore, trial courts "have wide discretion within the limits of 15 V.S.A. § 751 . . . in formulating awards of property upon divorce." *Atwood*, 143 Vt. at 300, 465 A.2d at 1355. The maintenance arrearage was a debt that could be reallocated by the court in its final decree. The court was well within its discretion in determining that it was equitable to nullify the arrearage.

*Reversed and remanded for reconsideration of the property distribution and maintenance award consistent with this opinion.*

¶ 32. **Reiber, C.J.**, concurring and dissenting. I agree with the majority's holding that a beneficial interest in a revocable trust is essentially equivalent to an interest in a will, and therefore a mere "expectancy" that must be excluded from the marital estate. *Ante*, ¶ 18. I disagree with its corollary holding that such an "expectancy" may nevertheless be considered in dividing the marital property. If speculative interests of this nature are unworthy of being included within the marital estate, I see no grounds for their legitimate consideration in assessing a party's "opportunity . . . for future acquisition of capital assets and income." 15 V.S.A. § 751(b)(8). To predicate a division of marital property upon an interest "revocable at the will of the settlor, at any time and for any reason," *In re Marriage of Githens*, 204 P.3d 835, 839 (Or. Ct. App. 2009), is no more fair or reasonable than attempting to apportion that interest. See *id.* at 843 (joining in the conclusion of nearly every other court that has addressed the issue in holding "that a beneficial interest in a revocable trust is not 'property' subject to division in a dissolution case"). I therefore respectfully dissent from that portion of the majority opinion concluding otherwise.

504

¶ 33. The majority asserts that excluding a revocable-trust interest from the marital estate "does not prevent it from being considered under § 751(b)(8)." *Ante,* ¶ 23. The rationale offered for this distinction is that the "opportunity" for capital acquisition requires only a "likelihood" of occurrence, not a "certainty." *Ante,* ¶ 21. This reasoning is unpersuasive. To be sure, nothing is ever certain, and courts must have some leeway to prognosticate the future acquisition of assets and income. But those factors that have traditionally been cited as evidence of a party's superior opportunity to earn and accumulate — a successful business, vested pension, professional degree or training, skilled work experience, and the like — all generally lie within the party's application and control. This stands in sharp contrast to the absolute uncertainty inherent in a beneficial interest subject to revocation by a third party completely outside the control of the beneficiary, "at any time and for any reason." *In re Githens,* 204 P.3d at 839.[7]

¶ 34. This absolute uncertainty explains why many courts have categorically rejected the notion that a mere "expectancy" under a will or a revocable trust may constitute a legitimate consideration in dividing marital property. The Connecticut Supreme Court's decision in *Rubin v. Rubin,* 527 A.2d 1184 (Conn. 1987), is illustrative. There, the court considered whether a husband's beneficial interest in his mother's will and revocable inter vivos trust could be included within the marital estate or considered as a factor in the property division and alimony award. Relying on earlier precedent, the court concluded that these interests were " 'at best, speculative,' " the " 'bare hope of succession to the property of another,' " and therefore outside the marital estate. *Id.* at 1187 (quoting *Krause v. Krause,* 387 A.2d 548, 550 (Conn. 1978)).

¶ 35. The court went on to hold that such expectancies could not be considered in any respect in dividing the estate or awarding

---

[7] The majority's response is to reject any statutory basis for excluding expectancies that are beyond the beneficiary's control because the statutory language "on its face is only probabilistic." *Ante,* ¶ 25. The argument proves too much, since taken to its logical conclusion the trial court would have no authority under the statute to exclude any alleged expectancy or opportunity so long as there was any likelihood of its fruition. On the contrary — and abstract "metaphysical" considerations aside — *ante,* ¶ 25, experience and ample authority support a principled distinction between opportunities over which a party has some — albeit not complete — control and others over which a party has little or none.

alimony. *Id.* at 1190. While acknowledging that family courts must often fashion awards "contingent upon some future event," the court concluded that this discretion did not extend to an expectancy that "may never be realized because of diminution of the donor's wealth or a change in the planned disposition of his property." *Id.* at 1189. Indeed, to conclude otherwise, the court observed, would be to "sanction[] in a different guise an assignment of property not . . . within the jurisdiction of the court." *Id.* at 1190.

¶ 36. Ultimately the court's conclusion was grounded upon considerations of reason and fairness. "To base a division of property, which is not ordinarily subject to modification, upon the possibility of a future inheritance might often prove to be unfair in the light of subsequent events." *Id.* at 1191. While some uncertainty about future events is unavoidable, such decisions "should not," the court explained, "be premised upon predictions as to future income that depend wholly upon the generosity of others for realization." *Id.*

¶ 37. Other courts have reached similar conclusions. See, e.g., *In re Marriage of Beadle*, 1998 MT 225, ¶ 43, 968 P.2d 698 (holding that husband's beneficial interest in revocable trust was not properly included in marital estate and could not be considered as factor relating to future acquisition of capital assets in dividing marital estate); *Johnston v. Johnston*, 815 P.2d 1145, 1148 (Mont. 1991) (rejecting claim that wife's "expected future inheritance" under her father's will could be considered under statutory provision for "future acquisition of capital assets and income" since her interest was "highly speculative and thus, inappropriate" for consideration); *In re Goodlander*, 20 A.3d 199, 205, 210 (N.H. 2011) (holding that interest in revocable trust was "mere expectancy" that could not be included within marital estate or considered as an asset "outside of the marital property" in dividing marital estate); *Petty v. Petty*, 680 S.E.2d 894, 899 (N.C. Ct. App. 2009) (holding that party's future inheritance under father's will was "too speculative to be used as a distributional factor" in property division and its admission as evidence would render trial "overwhelmingly complicated" (citation omitted)); *Powell v. Powell*, 577 A.2d 576, 580 n.5 (Pa. Super. Ct. 1990) (rejecting husband's assertion that court must consider money wife would inherit upon her mother's death as an "opportunity . . . for future acquisition

of capital assets and income," concluding that wife's inheritance was "purely speculative").[8]

¶ 38. The majority asserts that "because a property distribution cannot be modified where a change of circumstances occurs" it is all the more necessary to predict "future circumstances to bring about a fair result." *Ante,* ¶ 23. The majority suggests that this somehow supports its holding, but the opposite is true: it is precisely the permanent nature of a property award that dictates *against* the consideration of such inherently speculative interests as revocable trusts, which turn entirely on circumstances beyond the party's control and may never eventuate. Some uncertainty is unavoidable. Yet, as the *Rubin* court recognized, where an award is based "upon a possible inheritance, which may never materialize in any form or at any time remotely corresponding to the trial court's assumptions, the risk of inequity is substantially greater." 527 A.2d at 1191. This reasoning is sound. I would therefore affirm the trial court's ruling excluding the revocable trusts from any consideration in the division of the marital estate.

---

[8] The majority's suggestion that we endorsed a contrary approach in *Mizzi v Mizzi,* 2005 VT 120, 179 Vt. 555, 889 A.2d 753 (mem.), is questionable. The trial court there considered wife's future inheritance in the property division but found that it was offset by other factors. We concluded that, "[g]iven the inherent uncertainty in the timing and amount of wife's inheritance from her mother, it was not an abuse of discretion for the court to determine that neither party had a greater opportunity for future earnings." *Id.* ¶ 9. This is hardly an endorsement of the consideration of future inheritance under § 751(b)(8), and indeed suggests, to the contrary, that it is error to consider such an inheritance — even from a parent — given its "inherent uncertainty."