NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 89

No. 2015-352

| | |
|---|---|
| Stephanie (Allen) Casavant | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Maurice Allen | May Term, 2016 |

Martin A. Maley, J.

Cynthia L. Broadfoot of Broadfoot, Attorneys at Law, Burlington, for Plaintiff-Appellee.

Sara Moran of Affolter Gannon, Essex Junction, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **EATON, J.**  Husband appeals from a final divorce order, arguing that the Family Division of the Chittenden Superior Court: (1) inequitably divided the marital assets; (2) committed reversible errors of fact; and (3) issued a decision based on impermissible bias. We affirm.

¶ 2.    Husband and wife were married in Florida in 2000, less than a month after the birth of their twin boys. They resided in husband's home state of Florida for the first several years of the marriage. They then moved to Vermont, living with wife's family in Enosburg, and later in St. Albans, before purchasing a home in Essex in 2010.

¶ 3.    Both parties were employed for most of the marriage, although husband was laid off from his job and remained unemployed for roughly one year. During that time, he filed a

discrimination lawsuit against his employer, which resulted in a settlement. In February 2014, the parties separated, and wife filed for divorce. At the time of the final hearing, wife was employed as a property manager, earning $59,000 annually, while husband was employed as a production supervisor earning $52,000 annually. Since the parties separated, wife and the children have lived at the home in Essex. A partial final order concerning parental rights and responsibilities and parent-child contact, which is not part of this appeal, was issued in December 2014.

¶ 4. On July 1, 2015, the court held a final hearing to conclude all remaining issues relative to the division of property. The parties' marital property was modest. Their primary asset was the marital residence in Essex. They agreed that the home had a value of $253,500, and the court concluded that the equity of the home was approximately $38,000.[1] They also agreed that they had $8000 in a savings account, that wife's vehicle had a value of $5000-$6000, and that they had a $28,000 tax lien stemming from taxes owed by husband as part of his discrimination settlement. Husband estimated he expected to receive $9000 in proceeds pending from a personal injury claim. The parties disputed the value of husband's vehicle, a 1972 Chevelle; wife asserted that it was worth up to $30,000, whereas husband felt that it was worth $9865.[2]

¶ 5. At the hearing, wife testified that the relationship was "a bad situation . . . , it was never good." She described husband's behaviors as creating strain on the relationship, especially his infidelity, alcohol abuse, and going out with friends leaving her home alone with the children.

---

[1] The parties dispute the precise equity they have in the marital home. Husband argues that they have $41,396.01. Even if the family court miscalculated the home equity, this minor error is "an erroneous nonessential finding [that] does not require reversal of the court's property disposition." Plante v. Plante, 148 Vt. 234, 237, 531 A.2d 926, 928 (1987). We therefore make no effort to calculate the exact value of the equity in the marital home.

[2] The court was persuaded by husband's estimate, given the need for repairs to the vehicle.

Although she had hoped that moving the family to Vermont would put an end to husband's affairs and drinking, it did not. Wife also testified that over time, husband became increasingly hostile and verbally abusive towards her, and that on a number of occasions husband unexpectedly left the family and went back to Florida. In her view, this behavior only worsened when husband was laid off from his job and the stress of his discrimination lawsuit caused him to become depressed. She also described the effect of husband's drinking and verbal abuse on the children, as many of his outbursts occurred in their presence, and their current struggles with mental health issues: one child is depressed and the other has made suicidal gestures requiring residential treatment.

¶ 6. Wife further testified as to the stress created by husband's excessive spending habits, which reached an apex when his discrimination suit was resolved and he received between $86,000 and $89,504 in settlement proceeds.[3] Even before the settlement, husband had over $27,000 in credit card debt.[4] Following the settlement, he paid off that debt, and he spent some of the funds on improvements to the marital home, although the parties dispute the amount of those improvements,[5] and $23,547.99 on guns, jewelry, and a Mercedes automobile, which he later wrecked. He also made large cash withdrawals and took cash advances on credit cards; when he reached the spending limits on his credit cards, he used PayPal to make further purchases.

---

[3] According to the family court record, husband received a settlement check of $69,504, which he deposited into the parties' bank account on April 30, 2013. Wife contends that he received two additional payments of $10,000 each, one of which was deposited into their account on May 9 and the other of which was deposited into their account on May 13. This would mean the settlement was for $89,504. The court found that he received $69,504, which was deposited on April 30, and an additional $16,548 in May 2013. A bankruptcy petition disclosure indicates that the settlement proceeds totaled $88,000 ($20,296 for lost wages and $69,704 for emotional distress).

[4] Husband disputes this figure, arguing that he paid off $21,950 in credit card debt.

[5] Husband alleges that $37,468.23 of the settlement proceeds were spent on home improvements; wife estimates that figure as being closer to $39,000.

3

¶ 7.    Husband's struggles with finances came to a head in October of 2014 when he filed for bankruptcy. At the time he filed, the parties had been separated for nine months, but had yet to file for divorce. The bankruptcy petition included unsecured debt of $66,000, including approximately $50,000 in credit card debt.

¶ 8.    Wife testified that except for the home improvements, husband's purchases were made without her knowledge or were made over her objection. Wife also testified that as a result of this spending, she was forced to obtain a personal loan to pay her car loan and two credit union bills. Although the parties acknowledge that they understood they would be liable for state and federal income taxes on the settlement proceeds, and in fact set aside approximately $26,000 for those taxes, that money was spent on other things. While the family court found that some of that money was spent consensually by the parties on home improvements, the court did not have enough evidence to clearly identify how the rest of the money was spent. Wife testified that when it became clear that they did not have sufficient funds remaining to pay the settlement tax obligation, she set aside $8000 from a severance payment made to husband for that purpose.

¶ 9.    At the hearing, husband contested wife's account of the marriage. He claimed that wife inaccurately blamed him for the failure of the marriage, denied ever engaging in extramarital affairs, and denied the verbal abuse. He also claimed that his excessive drinking was under control by 2013 and that his drinking was primarily in response to stress brought on from his discrimination lawsuit. Regarding his spending habits, husband claimed that wife was aware of the purchases, did not protest them at the time, and that some of the purchases were for her benefit. In addition, he argued that the timing of the bankruptcy, which was after the parties separated, shows that a contributing factor was the pending divorce to a greater extent than his spending habits.

¶ 10.    Weighing all the evidence, the family court considered all twelve factors listed in 15 V.S.A. § 751(b) in order to determine an equitable distribution of the marital property. The

4

court particularly honed in on the fact that the children's stability was increased by allowing wife to maintain the family home; that although money from the settlement was used for improvements and repairs to the marital home, such money was a marital asset received during the marriage and that husband's spending contributed significantly to the depreciation of the marital estate; and that the merits of the parties was a significant factor in the court's determination. As to the respective merits of the parties, the court found that husband's behavior throughout the marriage, including infidelity, alcoholism, emotional abuse, and uncontrolled spending, played a significant role in the breakdown of the marriage.

¶ 11. Based on these findings, the court awarded the marital home to wife, including all equity and expenses related thereto, as well as her car, bank accounts in her name, and personal property items in her possession. Husband was awarded $8000 in savings, any proceeds from his pending personal injury claim, which he had valued at $9000, his Chevelle, bank accounts in his name, and all personal property in his possession; the court also found him responsible for the $28,000 tax debt. Husband filed a Motion to Alter or Amend the Judgment alleging that certain findings of fact were faulty and that in light of the correct facts, the family court's property allocations were inequitable. On August 7, 2015, the family court denied husband's motion to alter or amend the judgement. Husband appealed.

¶ 12. We turn now to husband's three challenges: that (1) the court's property award was inequitable; (2) the court relied on inaccurate facts in dividing the parties' property; and (3) the court's property division was based on impermissible judicial bias against him. We review a family court's property distribution in a divorce proceeding for abuse of discretion. MacCormack v. MacCormack, 2015 VT 64, ¶ 3, ___ Vt. ___, 123 A.3d 383, 385 (citation omitted).

¶ 13. Husband puts forth two arguments why the family court's property distribution was inequitable: (1) the award is disproportionate; and (2) it leaves him in a precarious financial situation. We address these arguments in turn.

¶ 14. Husband asserts that the property award is disproportionate because he received only 27% of the marital assets if the pending personal injury suit is included in his share and 15% if it is not, and was assigned all the tax debt, which leaves him with more debts than assets. He contends that the family court's consideration of the statutory factors in 15 V.S.A. § 751(b) amounted to an abuse of discretion.

¶ 15. The Legislature has provided family courts with twelve factors it may consider when making property awards. 15 V.S.A. § 751(b). There is no specific formula for assessing these factors, which are not exclusive, and family courts have broad discretion in assigning weight to each one. Molleur v. Molleur, 2012 VT 16, ¶ 15, 191 Vt. 202, 210, 44 A.3d 763, 768. The division of marital property "is not an exact science and, therefore, all that is required is that the distribution be equitable." Kasser v. Kasser, 2006 VT 2, ¶ 30, 179 Vt. 259, 895 A.2d 134, 142 (citation omitted). An equitable award does not, however, mean an equal one. Goodrich v. Goodrich, 158 Vt. 587, 593, 613 A.2d 203, 206 (1992). "A disparate property division is not 'facially inequitable,' and will not be reversed as long as the family court makes adequate findings that are supported by the evidence." MacCormack, 2015 VT 64, ¶ 17 (quoting Wade v. Wade, 2005 VT 72, ¶ 20, 178 Vt. 189, 878 A.2d 303). Furthermore, we note that where the court finds that one party is primarily responsible for the debt, it acts within its discretion when it assigns all the debt to that party. See Wade, 2005 VT 72, ¶ 17 (holding that it was within family court's discretion to assign all debt to one party when court found that party to be at fault for debt). We will thus uphold the family court's division of marital property "unless its discretion was withheld or abused." Id.

¶ 16.    The factors the court gave the most weight to were "[t]he desirability of awarding the family home . . . to the spouse having custody of the children," "[t]he contribution of each spouse in the acquisition, preservation, and depreciation or appreciation in value of the respective estates," and "[t]he respective merits of the parties."   15 V.S.A. §§ 751(b)(9), 751(b)(11), 751(b)(12).  The court concluded that all three of these factors decidedly favored wife.  The court concluded that wife's custody of the children was a "crucial factor in the determination of how to distribute the parties' property."  The court also concluded that although husband did contribute to the marital estate with the proceeds from his discrimination settlement, his "spending contributed significantly to the depreciation of the marital estate."  The court also found that husband was primarily responsible for the failure of the marriage; specifically, that his infidelity, alcoholism, emotional abuse, and spending habits significantly harmed the stability of the family, thus giving weight to the respective merits of the parties.  The evidence on some of these issues was competing, and it was within the court's province to determine the credibility of the witnesses and the weight to be given to their testimony.  Beyel v. Degan, 142 Vt. 617, 620, 458 A.2d 1137, 1138 (1983).  While the court could have more fully explained the reasoning behind the property distribution, it did make sufficient findings and gave an adequate basis in its conclusions of law to provide for appellate review.  Heath v. Palmer, 2006 VT 125, ¶ 10, 181 Vt. 545, 548, 915 A.2d 1290, 1294-95 (2006).

¶ 17.    The family court was clearly aware of the factors that favored husband, such as his having less education and making slightly less money annually than wife, and that husband contributed financially to the marital estate.  Nonetheless, the court acted within its discretion to assign more weight to some factors than others and ultimately to conclude that wife was entitled to more of the marital property than husband.  See Molleur, 2012 VT 16, ¶ 14 (stating that "[t]he court need not specify the weight given to each factor, but is required only to provide a clear statement as to what was decided and why." (quotation omitted)).  Central to the court's property

7

division was its determination that husband had engaged in affairs, had been drinking to excess, had been abusive, and had been an undisciplined spender. There was evidence, primarily from wife's testimony, to support all of these conclusions which implicate a wide range of husband's conduct. The court also acted within its discretion when it assigned all the tax debt to husband based on the finding that he was primarily responsible for the lack of funds to cover the tax debt. Because the family court has broad discretion in determining a property award and we find no abuse of discretion here, we must affirm.

¶ 18. Husband also argues that regardless of the reasons behind the family court's property distribution, its distribution was inequitable. Specifically, husband contends that the family court abused its discretion because it left him in an "unreasonable financial circumstance," and in doing so failed to consider the statutory requirement that the court consider not only the respective merits of the parties, but also the condition in which each would be left by the divorce.

¶ 19. Husband claims that the family court must consider the condition in which the parties are left in making a property division. We note that under the current law, the condition the parties are left in as a result of the divorce is not a specifically enumerated factor in 15 V.S.A § 751(b). Husband relies on cases that refer to an older version of the statute,[6] which required courts to consider "the condition in which [the parties] shall be left by such divorce." 15 V.S.A. § 751 (amended 1981). The statute has since been amended and no longer includes that factor in the current, non-exclusive, list of factors the court may consider. We need not resolve the impact, if any, that the amendment of the statute had on consideration of the parties' post-divorce condition. The court's property division did not leave husband in an unreasonable financial

---

[6] Kinley v. Kinley, 140 Vt. 77, 435 A.2d 698 (1981); Lalumiere v. Lalumiere, 149 Vt. 469, 544 A.2d 1170 (1988) (quoting Kinley for statutory language instead of citing 15 V.S.A. § 751 directly.).

circumstance. Husband remains employed with annual wages of $52,000. The court awarded the Chevelle, the remaining savings of $8000 and the pending personal injury claim to husband. While husband was assigned the tax debt, the court freed him from any further obligation on the home mortgage loan or other expenses related to the marital home. Given his income and the assets he was awarded, husband has not been left in an unreasonable financial circumstance by the property division. As a result, specific consideration of the financial situation in which the property award would leave husband, even if necessary, would not require a different property division.

¶ 20. Husband's second issue on appeal is that the family court made several incorrect findings of fact which constitute reversible error. Specifically, he argues that the family court incorrectly found that his spending of the settlement proceeds dissipated the marital estate. In addition, he argues that the family court did not possess enough evidence to support the finding that he engaged in extramarital affairs, was an alcoholic, subjected wife to emotional abuse, alienated his children and had a spending disorder; all of which led to the conclusion that he was primarily responsible for the failure of the marriage.[7]

¶ 21. As stated above, the family court enjoys broad discretion in dividing marital property, and we will uphold its decision unless that discretion is abused. MacCormack, 2015 VT 64, ¶ 17. "Individual findings of fact will stand unless clearly erroneous." In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993) (citation omitted). "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." Id.

---

[7] In his brief, husband also argued that the settlement proceeds were his, and his alone, and that his spending cannot be used as evidence that he dissipated the marital assets. Because husband conceded at oral argument that the settlement proceeds were a marital asset, we decline to address this argument here. Regardless, we note that 15 V.S.A. § 751(a) provides that "[a]ll property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the Court." This is consistent with our holding in Bero v. Bero, 134 Vt. 533, 367 A.2d 165 (1976), although the provenance and purpose of the settlement proceeds may be an important factor in some cases in the property distribution.

When evidence in the record supports different conclusions "[w]e leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence." Id. The burden is on the appellant to prove that the family court committed a reversible error. Field v. Field, 139 Vt. 242, 244, 427 A.2d 350, 352 (1981).

¶ 22. There is adequate evidence in the record to support the findings of fact that husband challenges. Wife testified that husband engaged in extramarital affairs, drank heavily, was emotionally abusive to her—often in the presence of the children—and made extravagant expenditures without her consent. To be sure, husband spent some money on the improvement of the marital home, which benefitted the marital estate. But while the trial court may not have been able to account for every dollar spent from the testimony provided, there was ample evidence that husband had spent significant sums beyond the parties means on jewelry and other non-essentials, and that wife had been forced to set aside what little funds remained from husband's discrimination law suit in an attempt to cover at least some of the resulting tax liability. It is not contested that at least $80,000 was spent between the time the law suit settlement proceeds were received and the time of separation, a period of less than a year. But the property division was not made solely on the basis that husband had dissipated marital assets by imprudent spending. The testimony was more than adequate to support the family court's findings of fact on the many aspects of husband's conduct which played a part in the court's property division. These included not only financial considerations, but abusive behavior, excess drinking and extra-marital affairs. Thus, husband has failed to show that the family court made any reversible errors of fact.

¶ 23. Finally, husband contends that the trial judge verbally expressed bias against him, demonstrating a lack of impartiality. Husband alleges that the judge made negative comments about husband's credibility during an off the record conference in chambers prior to the final hearing. Wife argues that regardless of what the parties discussed in chambers, the conversation

10

was not on the record and neither party objected on the record during the hearing, and therefore the issue was not preserved for appeal.

¶ 24. "Our review is confined to the record and evidence adduced at trial. On appeal, we cannot consider facts not in the record." Hoover v. Hoover, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000). Thus, we cannot credit and assess the alleged statements made in the judge's chambers for which no record exists. More importantly, however, husband failed to preserve his right to appeal this issue. To preserve the issue of judicial bias, a litigant must seek to disqualify the presiding judge in the trial court. DeLeonardis v. Page, 2010 VT 52, ¶ 31, 188 Vt. 94, 998 A.2d 1072. Husband did not do so, and has thus waived his right to appeal this issue. We therefore cannot and do not address this issue.

Affirmed.

FOR THE COURT:

_____
Associate Justice

11