NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 105

No. 2018-008

| | |
|---|---|
| Donna M. Jaro | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Todd M. Jaro | May Term, 2018 |

Kirstin K. Schoonover, J.

Catherine E. Clark of Clark, Werner & Flynn, P.C., Burlington, for Plaintiff-Appellee.

Peter F. Langrock of Langrock Sperry & Wool, LLP, Middlebury, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** Husband, Todd M. Jaro, appeals a final divorce order issued by the superior court, family division. Husband challenges the court's property division, and asserts the court erred in awarding him an amount of spousal maintenance outside the statutory guideline without stating a reason for diverging from the guideline. 15 V.S.A. § 752(b)(8). We affirm.

¶ 2. The trial court found the following. The parties married in 1989 and separated in 2016—a long-term marriage. When wife Donna Jaro filed for divorce in September 2016, she was fifty years old and in good health. Husband was fifty-four years old and was in relatively good health, although he had well-managed diabetes and, beginning late in the marriage, depression. The parties have two grown children.

¶ 3.     Neither party attended college.  Wife spent long hours taking care of the household and children, and was also the primary breadwinner.  She works for the Department of Homeland Security, with an annual salary of $135,000.  Husband worked as a mechanic in various repair shops during the marriage, and at one point set up a home garage.  The parties spent at least $70,000 to set up this venture.  Husband was voluntarily underemployed throughout the marriage.  He currently has a job doing maintenance work and working on cars for forty hours per week at eighteen dollars per hour, grossing around $38,000 per year.  The trial court found that husband could earn as much as twenty-five dollars per hour, or $52,000 per year, given his work experience and skills as a mechanic.

¶ 4.     In 2007, husband started his own business as an independent tool distributor.  The parties bought a $75,000 truck and $40,000 in tools for this business, which operated at a loss.  The truck and tools are currently at an auction house.  Wife proposed to sell them to help pay marital debt; she asked to control the sale because she stated that husband had refused to cooperate.  Wife believed she could get $50,000 for these items, which the court found credible.  The record reflects that husband valued these items at $75,000 and was willing to accept them in "his column" of the property division balance at that higher value.

¶ 5.     Wife introduced a January 2015 report showing accounts receivable from this tool business of $66,223 and testified that they were collectible.  Husband acknowledged that he was not actively pursuing those accounts; he explained that they were old and opined that he could collect $5,000 of that amount.  The court found that "with a little effort" husband could probably collect at least $20,000.

¶ 6.     Both parties had retirement accounts.  Wife had a Thrift Saving Plan (TSP) and a government pension (FERS).  The value of the TSP was $268,260.00 at the time of separation, and by June 2017 it had increased to $305,401.99.  However, wife owes $16,000 in loans taken

against the TSP account during the marriage to support husband's businesses and to pay off marital debt. Husband held three retirement accounts totaling $15,219.

¶ 7.     The marital home, where wife was living at the time of the final divorce, was worth $355,000, with a mortgage of $286,672 and net equity of $68,238. The court itemized nearly $39,000 of marital debt in husband's name, as well as around $134,000 in joint marital debt, including the $16,000 loan against wife's TSP account and nearly $80,000 of student loan debt for the parties' daughter on which wife was a cosigner.

¶ 8.     The trial court made extensive findings based on testimony from wife and the daughter that husband was physically abusive to both throughout the marriage. The court found that husband had harmed the family physically and emotionally as a result. The court found that there was no evidence that these behaviors were caused by husband's depression. In addition, the court described various instances of financial mismanagement and other malfeasance by husband after separation, resulting in unpaid bills and depletion of marital assets.

¶ 9.     Based on the above, the court explained that, although it normally divides marital property evenly in a long-term marriage, in this case husband's abusive behavior during the marriage and his actions at the end of the marriage and ensuing separation that depleted the parties' assets prompted the court to depart from an even split. The court awarded husband $90,000 from wife's TSP—substantially less than half of the value of the parties' combined retirement accounts (which totaled around $320,000 at the time of the final hearing). With respect to wife's FERS pension, the court awarded husband forty-five percent of the marital portion. The court awarded the marital home to wife and required her to pay husband half the equity—$34,119. The court awarded wife additional marital property worth $86,754 and debt of $66,465.[1] The assets awarded to wife included husband's truck and inventory at the auction house that the court had valued at

---

[1] The court did not count the daughter's student loan debt since the daughter was making those payments.

$50,000. The court awarded husband $72,144 in property and assigned $46,550 of debt. The property included the accounts receivable that the court had valued at $20,000.

¶ 10. The court concluded that husband was entitled to spousal maintenance because he lacked sufficient employment, income, or property to provide for his reasonable needs given the standard of living established during the marriage. 15 V.S.A. § 752(a). The court emphasized that husband was not entitled to permanent maintenance with a compensatory component, as wife not only provided the financial support for the family, but she also maintained the home, raised the children, and supported husband's business ventures. Husband's underemployment during the marriage did not increase wife's future earning capacity or enable him to help meet the family's needs. The court noted that even if it awarded permanent maintenance to equalize incomes, husband would not have the same standard of living as during the marriage. Accordingly, the court concluded that some maintenance was necessary to provide husband with at least a semblance of the standard of living the parties had enjoyed.

¶ 11. Applying the statutory factors, the court noted husband's ability to earn twenty-five dollars per hour, the significant assets husband received in the property division, and that his needs were minimal. The court explained, "The [c]ourt does not believe [husband] will need the guideline amount to meet his reasonable needs although he will need some additional income to meet his needs independently." The court accordingly awarded husband $1,725 per month for a period of eight years. At that point, the court anticipated that wife would be close to retirement and no longer able to generate income, and both parties would have access to retirement funds to meet their needs.[2]

¶ 12. On appeal, husband makes two specific challenges to the findings and conclusions in the court's property division order, and contends that the court erred when it awarded him

---

[2] The court built in an annual 1.5% increase in this amount, provided that wife's gross income increases at least that much, and it deferred the start date for spousal maintenance by several months to give wife time to pay off a significant portion of the debt assigned to her.

spousal maintenance that was outside the statutory guideline calculation, 15 V.S.A. § 752(b)(8), without supplying a rationale for departing from the recommended guideline amount.

¶ 13.    In reviewing a family court judgment in a divorce proceeding, "we look to whether the [family] judge has adequately explained the underlying rationale for its decision, which we will not disturb absent a showing that the court abused its discretion." MacCormack v. MacCormack, 2015 VT 64, ¶ 3, 199 Vt. 233, 123 A.3d 383 (quotation and alterations omitted). This standard of review applies to both property division and spousal maintenance awards. Atwood v. Atwood, 143 Vt. 298, 300, 465 A.2d 1354, 1355 (1983) ("[Family] courts have wide discretion . . . in formulating awards of property upon divorce.").

## I.  Property Division

¶ 14.    Husband makes two specific challenges to the trial court's property division. First, he argues that the trial court abused its discretion by awarding the truck and tool business equipment to wife with a valuation of $50,000 when he was willing to accept those items in his column with a greater valuation of $75,000. Second, he argues that the trial court erred in valuing the accounts receivable that were assigned to him.

¶ 15.    In making an equitable distribution of marital property, the family court considers all relevant factors, including the twelve factors set forth in 15 V.S.A. § 751(b). Property division "is not an exact science." Plante v. Plante, 148 Vt. 234, 237, 531 A.2d 926, 928 (1987) (quotation omitted). Furthermore, "[t]he distribution must be equitable, not necessarily equal," under the court's broad discretion. Myott v. Myott, 149 Vt. 573, 579, 547 A.2d 1336, 1340 (1988).

¶ 16.    The court did not abuse its discretion in valuing and allocating the truck and tool business equipment. We recognize that the court could have exercised its discretion to award the truck and tool equipment to husband, at a value of $75,000. We understand husband's logic—if the assets were really only worth $50,000, assigning them to him at his agreed value of $75,000 would enable the court to award correspondingly more to wife. Because husband wanted these

5

assets, it would be a win-win. Although it was logical, we cannot conclude that the trial court's failure to embrace husband's proposal was an abuse of its discretion. Wife testified that she needed the funds from the sale of these assets to pay marital debts. Given wife's testimony that husband had not cooperated in their sale, the court could reasonably conclude that the best way to ensure that the equipment would be timely sold, and debts correspondingly paid down, would be to award them to wife. We find no abuse of discretion.

¶ 17. Likewise, the court's finding concerning the value of the accounts receivable is supported by the evidence.[3] Wife presented evidence from the the business books that the outstanding accounts receivable were $66,223. She testified that she helped husband with aspects of the bookkeeping for his business, that he had not made any effort to recover these receivables that had been building since 2007, and that the receivables were collectible. Although husband valued the accounts at $5,000, he acknowledged that he had not tried to collect on them. Given this evidence, the court reasonably assigned a value that reflected a deep discount over the face value of the accounts receivable, while also accounting for husband's lack of effort to collect them. We cannot conclude that the court's valuation was unsupported by evidence or an abuse of discretion. See Albarelli v. Albarelli, 152 Vt. 46, 48, 564 A.2d 598, 599 (1989) (acknowledging that task of setting valuations is "imprecise").

## II. Spousal Maintenance

¶ 18. Husband argues that the trial court erred in setting an amount and duration of spousal maintenance that fell outside of the statutory guideline calculation without providing a rationale for doing so. He argues that under those guidelines, even given the income the court

---

[3] Husband's argument assumes that if the court had assigned a lower value to this asset it would have awarded more property or less debt to husband. Given the court's order, it is not clear that this is true. See Mills v. Mills, 167 Vt. 567, 568, 702 A.2d 79, 80 (1997) ("The failure to value an asset may be considered harmless error if it does not affect the final distribution."). Because we conclude that the court's valuation was supported by evidence, we need not determine whether any error impacted the court's property division.

6

imputed to husband, the guidelines would call for annual spousal support of $24,900 to $41,500 for a period of 4.05 to 12.6 years.[4] The court here awarded husband $20,700 in annual spousal maintenance for eight years, which is outside of that guideline range. Husband argues that the trial court failed to provide a rationale for departing from the guideline calculation.

¶ 19. We conclude that the guidelines calculation, while important, is not presumptive; that is, a court need not justify a departure from the guideline range. However, like any other statutory factor, the court must consider the guideline spousal maintenance range in fashioning its spousal maintenance award. Because the record reflects that the court did so here, we affirm.

¶ 20. Spousal maintenance is appropriate when a spouse does not have the income or earning capacity to sustain the standard of living established during the marriage. 15 V.S.A. § 752(a). The Legislature has established a non-exclusive list of factors the court should consider in determining a spousal maintenance award. Id. § 752(b).

¶ 21. The newest factor on this list consists of guidelines that establish ranges for the amount and duration of spousal maintenance awards based on the length of the marriage and the difference between the parties' respective gross incomes. Id. § 752(b)(8). The Legislature added this factor effective June 5, 2017, with a sunset of July 1, 2019. See 2017, No. 60, §§ 2-4. In the same enactment, it created a task force to make recommendations concerning Vermont's spousal support laws to improve clarity, fairness, predictability, and consistency across the state in recognition of changing family structures. Id. § 1. Given that the guidelines factor was added on a temporary basis at the same time as the Legislature formed this task force, we infer that this provision was likewise designed to increase the clarity, fairness, predictability, and consistency across the state in the calculation of spousal maintenance. In 2018, pursuant to the task force's

_____

[4] Given that the marriage was longer than twenty years, the guidelines call for spousal maintenance for a period equal to forty-five percent of the twenty-seven years of the parties' marriage, or 12.15 years. § 752(b)(8). The court's award accordingly fell outside of the guidelines as to amount—as husband argues—as well as duration.

recommendation, the Legislature postponed the repeal date with respect to this factor until July 1, 2021, to allow more time to gauge the usefulness of the guidelines.  2017, No. 203 (Adj. Sess.), § 3; see also Spousal Support and Maintenance Task Force Recommendations (November 30, 2017), https://legislature.vermont.gov/assets/Documents/2018/WorkGroups/House%20Judiciary/ Bills/S.244/S.244~Brynn%20Hare~Spousal%20Support%20and%20Maintenance%20Task%20 Force%20Report~3-22-2018.pdf [https://perma.cc/QY43-2GUC].

¶ 22.    Nothing about the text of the statute suggests that the guidelines carry presumptive weight in the spousal maintenance determination, such that the court must justify an award outside of the guidelines range.  The statutory child support guidelines provide a helpful contrast, reflecting that where the Legislature wants to establish presumptively applicable ranges it knows how to do so.  Pursuant to 15 V.S.A. § 658(a), a court is directed to award child support in the amount established by the guidelines unless it has specific grounds to deviate from the guidelines pursuant to 15 V.S.A. § 659.  Section 659 likewise states that the total support obligation per the guidelines is "presumed to be the amount of child support needed," and it authorizes the court to adjust the child support amount if the guidelines amount "is unfair to the child or any of the parties," in light of the ten specified factors.  Id. § 659(a) (emphasis added).  In contrast, the spousal maintenance guidelines are on a list of other factors relevant to the spousal maintenance determination, with no indication that the guidelines establish any sort of presumption.  Id. § 752(b)(1)-(8).

¶ 23.    Moreover, the temporary nature of the guidelines further undermines any suggestion that they establish a presumption.  As noted above, the guidelines factor was originally set to expire on July 1, 2019.  It has recently been extended for two more years to allow time to gauge its effectiveness, but it is still set to expire in three years.  The current impermanent status of this factor further undermines the suggestion that the Legislature intends that the guidelines establish a presumption that takes precedence over the other statutory considerations.

8

¶ 24. However, like the other statutory factors, the court must consider the statutory spousal maintenance guidelines. See Watson v. Watson, 2003 VT 80, ¶ 4, 175 Vt. 622, 833 A.2d 869 ("As long as the [trial] court's order reflects that it considered the relevant factors under § 752(b), the court is not required to issue specific findings on each factor, and the party challenging the award on appeal must show there is no reasonable basis for it." (quotation omitted and emphasis added)); Kohut v. Kohut, 164 Vt. 40, 43, 663 A.2d 942, 944 (1995) ("Findings are not required for each factor, as long as the court's decision reflects that the appropriate factors were taken into consideration, and the court is not required to make findings on factors where no evidence is presented." (emphasis added)). These guideline calculations, resting on only two variables (length of marriage and difference in incomes) may not fully account for the wide variety of circumstances informing a court's spousal maintenance calculation; this is likely the reason the Legislature has crafted them as factors in the analysis rather than presumptive calculations. However, the guideline calculations serve the Legislature's goals of promoting clarity, fairness, predictability, and consistency in spousal maintenance awards, and offer some insight into the Legislature's general sense of the appropriate ranges of spousal maintenance in most cases. For these reasons, courts should give them due consideration in crafting spousal maintenance awards.

¶ 25. The best way to demonstrate consideration of the guidelines factor is to state the applicable guidelines range as to amount and duration of spousal maintenance. But, as noted above, such a specific finding is not required if the record otherwise reflects consideration of the guidelines.

¶ 26. In this case, the trial court clearly knew that the spousal maintenance award fell outside the guidelines range because it specifically found that husband did not need the guideline amount to meet his reasonable needs. This finding reflects that the court considered this statutory factor and chose to weigh other factors and considerations more heavily. Given that the record reflects that the court considered the guidelines range, as well as the other § 752(b) factors, and

9

given that the court identified the considerations shaping its determination, we find no abuse of discretion.

Affirmed.

FOR THE COURT:

_____
Associate Justice

10