NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 105

No. 2020-077

| | |
|---|---|
| Gennifer Noble | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Family Division |
| | |
| Aaron Noble | September Term, 2020 |

Thomas Carlson, J.

Kurt M. Hughes of Murdoch Hughes Twarog Tarnelli, P.C., Burlington, for Plaintiff-Appellee.

Norman R. Blais, Burlington, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.     **ROBINSON, J.**     Husband appeals the parties' final divorce order relating to property division, arguing that the family division erred by: (1) barring him from conducting discovery of a non-party concerning a trust in which wife had an interest; and (2) awarding wife a lump sum as a retroactive temporary spousal award even though wife had neither requested nor been granted temporary spousal maintenance.  We affirm.

¶ 2.     Husband's challenge regarding discovery from a non-party arises from the trial court's pre-trial order denying his motion to authorize a subpoena to a non-party, and his challenge to the retroactive temporary spousal maintenance award is a response to the court's final divorce order.  We consider each order, and husband's arguments, in turn.

## I. Order Barring Discovery from Trustee

¶ 3.    We reject husband's challenge to the trial court's order declining to authorize a subpoena to a third party for information regarding the assets of a trust established by wife's grandfather and naming her as a beneficiary.  Wife's grandfather had established a trust in his full control until his death, then held for the benefit of wife's grandmother during her life.  Upon wife's grandmother's death, a share of the trust assets was directed to an ongoing trust for the benefit of grandfather's children, including wife's father.  The trust document further provided:

> Upon the death of any such child [including father], the Trustees shall pay over so much of the share designated for his or her benefit then remaining in the hands and possession of the Trustees, free of all trusts, under this instrument to or for the benefit of such person or persons in the class consisting of the issue of said child, in whatsoever manner, either outright or in trust, with different interests in different appointees (including the creation of new powers of appointment and the imposition of lawful conditions upon any appointee) as said child shall appoint by a will executed after the death of the Settlor referring specifically to the power herein given.

This provision limited the class of successor beneficiaries to wife and any siblings.

¶ 4.    During the pendency of the divorce, husband moved for permission to engage in discovery of wife's father, as trustee, concerning the trust's assets.  In particular, husband requested "reasonable discovery of the Trustee regarding the Trust assets and disbursements, the other beneficiaries whose interests in the Trusts have vested, and the relationship of the Trustee to such beneficiaries, including Plaintiff."  In the memorandum accompanying his motion, husband explained that he had first sought discovery from wife through interrogatories, but wife denied having any information about the trust.  Without the ability to seek discovery from the trustee of the now-irrevocable trusts, husband had "no other legitimate means to secure any information regarding the principal of the Trusts, the income or interest generated by the Trusts, or even the number of 'grandchildren' beneficiaries who now have a vested interest in the Trusts."

¶ 5.    The court denied the motion, concluding that husband was not entitled to the requested discovery.  The court explained that wife's father held the trust as the trustee, for his

exclusive benefit, and "in theory, he could spend it all." Further, the court concluded that the trust was irrevocable because the settlor—wife's grandfather—was now dead, but that wife's father had a "power of appointment" that gave him the "unfettered right to create a will that directs all of the trust assets to [wife's] brother or otherwise to restrict [wife's] right to benefits from the trust assets." The court concluded that wife's interest "is not vested and is subject to modification or divestment so long as [wife's] father is alive and retains the right to direct all of the trust assets to [wife's] sibling(s) and eliminate [wife's] interest [altogether]." For this reason, the court concluded that husband was not entitled to the requested discovery from father under 15 V.S.A. § 751(b)(8), as amended following this Court's decision in Billings v. Billings, 2011 VT 116, 190 Vt. 487, 35 A.3d 1030.

¶ 6. On appeal, husband contends that § 751(b)(8)(C) does not preclude him from subpoenaing wife's father because the trust at issue was irrevocable, and the provision's limitations on discovery from nonparties therefore do not apply.

¶ 7. We review questions of statutory interpretation without deference to the family division, and we apply the statute in accordance with its plain meaning if the language is clear. Collins v. Collins, 2017 VT 70, ¶ 16, 205 Vt. 251, 173 A.3d 345.

¶ 8. We conclude that the court did not err in denying the motion to allow discovery. The plain language of the statute unequivocally precludes a subpoena for information concerning the trust's assets because wife's interest in the trust, even if it is properly characterized as vested, is subject to modification or divestment. Husband's contrary statutory argument misses the mark because it focuses on the wrong prong of § 751(b)(8)(C). This plain-meaning understanding of the statute is consistent with the history and purpose of the provision, which the Legislature added to the statute in response to this Court's decision in Billings, 2011 VT 116, as well as with our post-amendment case law.

¶ 9. The nonexclusive list of factors a court may consider in dividing the parties' property in a divorce includes "[t]he opportunity of each [party] for future acquisition of capital

3

assets and income." 15 V.S.A. § 751(b)(8).  The statute elaborates on the application of this factor

to expectations of gifts or inheritances, providing that, for purposes of § 751(b)(8):

> (A) The court may consider the parties' lifestyle and decisions made during the marriage and any other competent evidence as related to their expectations of gifts or an inheritance.  The court shall not speculate as to the value of an inheritance or make a finding as to its value unless there is competent evidence of such value.
>
> (B) A party's interest in an inheritance that has not yet vested and is capable of modification or divestment shall not be included in the marital estate.
>
> (C) Notwithstanding any other provision of this subdivision (8), a person who is not a party to the divorce shall not be subject to any subpoena to provide documentation or to give testimony about:
>
>> (i) his or her assets, income, or net worth, unless it relates to a party's interest in an instrument that is vested and not capable of modification or divestment; or
>>
>> (ii) his or her revocable estate planning instruments, including interests that pass at death by operation of law or by contract, unless a party's interest in an instrument is vested and not capable of modification or divestment.
>
> (D) This subdivision (8) shall not be construed to limit the testimony given by the parties themselves or what can be obtained through discovery of the parties.

¶ 10.    This statute does three things.  First, it establishes that a party's interest in an

inheritance that has not yet vested and is capable of modification or divestment is not considered

part of the marital estate for purposes of equitable division of marital property.  Id. § 751(b)(8)(B).

Second, it provides that, although the unvested interest in an inheritance is not itself marital

property, the court may nevertheless consider the parties' expectations of gifts or inheritance as

evidenced by their lifestyles, decisions during the marriage, and other competent evidence.  Id.

§ 751(b)(8)(A).  The statute cautions against speculating about the value of an expected inheritance

in the absence of competent evidence.  Id.  Finally, it substantially restricts the circumstances under

which a party can subpoena a nonparty to provide information about the nonparty's assets or

revocable estate planning documents, precluding such discovery unless a party's interest in an

4

instrument is vested and not capable of modification or divestment. Id. § 751(b)(8)(C). This limitation on discovery protects nonparties from intrusive discovery into their private financial matters with respect to a party's expectancy that remains contingent, while authorizing reasonable discovery when a party's interest is fixed. Although the Legislature limited the parties' discovery from third parties relating to expected gifts or inheritance, it made it clear that parties are free to try to prove such expectations at trial by any competent evidence. See id. § 751(b)(8)(D).

¶ 11. Husband's motion to authorize discovery is governed by the provision relating to discovery from nonparties: § 751(b)(8)(C). Because husband primarily seeks information about the trust's income, assets, or value, his request is governed by § 751(b)(8)(C)(i), which expressly restricts discovery from a nonparty regarding "his or her assets, income, or net worth." The nonparty here is wife's father as trustee, who holds legal title to the trust assets, and the primary information husband seeks relates to the trust's "assets and disbursements."

¶ 12. Pursuant to the plain language of § 751(b)(8)(C)(i), the nonparty trustee cannot be subjected to subpoena to provide documents or testify about the value of the trust unless wife has an interest in the trust "that is vested and not capable of modification or divestment." The language of this provision is not ambiguous on this point. See Hayes v. Hayes, 2018 VT 102, ¶ 9, 208 Vt. 380, 198 A.3d 1263 ("If the language of the statute is clear, we apply the statute in accordance with its plain meaning." (quotation omitted) (alteration omitted)).

¶ 13. Even assuming that wife's interest as a beneficiary of the trust could be properly described as "vested," there is no dispute that her interest is capable of modification or divestment. Pursuant to the trust's terms, wife's father is free to deplete the principal of the trust. Moreover, although the universe of successor beneficiaries is limited to wife and her brother, father has unrestricted authority to exercise a power of appointment to allocate within that universe any trust funds remaining after his death. Father is not obligated to allocate any funds to wife. Because wife's interest is undisputedly subject to modification or divestment by father, under § 751(b)(8)(C)(i), husband was not entitled to the discovery he sought.

5

¶ 14. Husband's statutory argument does not persuade us otherwise. Husband focuses on § 751(b)(8)(C)(ii), which provides that a nonparty shall not be subjected to a subpoena for "his or her revocable estate planning instruments, including interests that pass at death by operation of law or by contract, unless a party's interest in an instrument is vested and not capable of modification or divestment." He argues that this provision only limits discovery concerning <u>revocable</u> estate-planning documents, and the trust at issue here is irrevocable. Because the provision does not limit discovery concerning <u>irrevocable</u> instruments, he contends he is entitled to the requested discovery. In so arguing, husband fails to consider both subdivisions of § 751(b)(8)(C). Husband is not seeking discovery of or about father's, or the trust's, <u>revocable</u> estate-planning instruments. If he were, subdivision (C)(ii), relating to discovery of revocable estate-planning instruments, would bar the discovery unless wife's interest in an instrument is vested and not capable of modification or divestment. Husband is seeking documentation about the trustee's assets, income, or net worth (or value), and this request for information about the value of this <u>irrevocable</u> trust is thus governed by subdivision (C)(i): husband is not entitled to the discovery unless wife's interest in the trust is "vested <u>and</u> not capable of modification or divestment." 15 V.S.A. § 751(b)(8)(C)(i) (emphasis added). Thus, § 751(b)(8)(C)(ii) has no bearing on husband's effort to subpoena information about the assets of that trust.[1]

¶ 15. This understanding of the statute is consistent with the history and purpose of § 751(b)(8) as amended in 2013. In 2011, this Court concluded in <u>Billings</u> that the family division erred by granting a husband's motion to exclude from his divorce proceeding any evidence, whether documentary or testimonial, of any revocable trusts or wills of which he might be the beneficiary. 2011 VT 116, ¶ 24. We held that a revocable trust to which a party may be a beneficiary is not marital property, emphasizing that the beneficiary's interest in such case is "only

---

[1] To the extent that husband is seeking information about whether and how wife's father has exercised his own power to modify or divest wife's interest through power of appointment or other estate planning instrument, <u>that</u> request does squarely implicate § 751(b)(8)(ii) and would be precluded if father's relevant estate planning instruments are revocable.

6

an expectancy." Id. ¶ 18. However, we concluded that a court may consider the likely receipt of future inheritances and trust assets or proceeds because the likely future inheritance represents an "opportunity" for a party to acquire future assets under 15 V.S.A. § 751(b)(8). Id. ¶ 23. We recognized that courts that have excluded evidence regarding future expectancies generally relied on the fact that the party had no marital property interest in assets in the will or trust, or on the fact that whether the inheritance would actually materialize was speculative. Id. ¶ 21. Because the husband's parents in Billings were the settlors of the revocable trust at issue, we concluded that there was a stronger likelihood that the trust would actually create real opportunity for husband to acquire assets in the future. Id. ¶ 24. We accordingly concluded that the family division improperly granted the motion that preemptively excluded evidence about the extent of husband's potential interest in revocable trusts and wills. Id.

¶ 16. Two years later, in 2013, the Legislature reacted to Billings, adding the provisions set forth above to § 751(b)(8). 2013, No. 63, § 1. As noted above, the amendments codified the principle that a party's interest in a future inheritance that is not vested and is therefore capable of modification or divestment is not marital property, 15 V.S.A. § 751(b)(8)(B); confirmed that a court may consider competent evidence relating to the parties' expectations of gifts or inheritance, id. § 751(b)(8)(A); emphasized that courts may not speculate as to the value of such expectancies, id.; imposed significant limitations on the power to subpoena third parties for specified information unless a party's interest in an instrument is vested and not capable of modification or divestment, id. § 751(b)(8)(C); and affirmed that, notwithstanding the limits on discovery from third parties, the parties are free to prove expectations concerning future gifts and inheritance through any competent evidence, id. § 751(b)(8)(D). By imposing such restrictions on discovery of nonparties, the Legislature apparently sought to limit discovery into a nonparty's assets, income, or estate-planning documents to circumstances in which a party's interest is neither speculative nor contingent.

¶ 17.    Our subsequent decision in Collins v. Collins reinforces this understanding of the 2013 amendment.  2017 VT 70.  In Collins, we considered a trial court order quashing a wife's subpoena to her husband's father as settlor of a revocable trust.  In the midst of the parties' divorce litigation, the husband's father amended his revocable trust to change the sole beneficiary from the husband to the parties' son.  The wife subpoenaed husband's father to testify at the parties' divorce hearing because she sought to show that father was not competent to amend his revocable trust, and that her husband's interest as beneficiary was therefore vested.  We affirmed the trial court's order, concluding that § 751(b)(8)(C)(ii), limiting discovery from nonparties regarding revocable estate-planning instruments to cases in which a party's interest is vested and not capable of modification or divestment, is "concerned with the terms of the trust and not with the capacity of the grantor to amend the trust."  Id. ¶ 16.  In so holding, we maintained the limits on discovery from nonparties the Legislature sought to impose when it amended § 751(b)(8)(C)(ii).

¶ 18.    Husband's reliance on Collins in this case is unfounded.  In the course of our discussion in Collins, we characterized the exception allowing a subpoena for a third party's testimony under § 751(b)(8)(C)(ii) as "allowing a subpoena for testimony about a party's vested interest in a trust."  Id. ¶ 16.  Husband argues that wife's interest in this case was vested and that our statement in Collins therefore supports his position that he is entitled to discovery concerning the trust.  This argument ignores the express statutory language limiting discovery from third parties to cases where a party's interest is both vested and not subject to modification or divestment.  15 V.S.A. § 751(b)(8)(C)(ii).  Moreover, it fails to recognize that § 751(b)(8)(C)(ii) only applies to discovery about revocable estate-planning instruments and does not apply to discovery of a nonparty's assets.

¶ 19.    As the trial court recognized, its discovery ruling did not preclude the court from considering any competent evidence that wife is currently deriving some benefit from the trust or has some reasonable expectation of future benefit.  See id. § 751(b)(8)(D).  Consistent with the

8

requirements of the statute, the court just restricted the third-party discovery available to husband to prove such expectation.[2]

## II. Retroactive Temporary Spousal Maintenance

¶ 20.    Husband's second challenge on appeal relates to the trial court's final divorce order. The trial court's findings and conclusions include the following. The parties began living together in 1999, married in 2005, and separated in late 2017, when wife left the marital home. Wife filed for divorce in July 2018. At the time of the final hearing in January 2020, husband was fifty-one years old and working full-time. Wife was fifty years old and had health issues that limited her ability to work to part-time.

¶ 21.    Beginning in around 2007, the parties lived in the marital home in Shelburne. The parties kept separate finances. Pursuant to the parties' agreement, wife made the monthly mortgage, tax, and insurance payments, and husband paid most of the rest of the parties' bills. After she left full-time employment in 2008 due to her health issues, wife continued making these payments even though she didn't have sufficient income to do so; she relied at least in part on early withdrawals from her retirement accounts. Through this same period, husband was depositing "significant amounts" into his savings and his own retirement account.

¶ 22.    The marital estate was worth a total of approximately $532,000, consisting primarily of the equity in the marital home, husband's savings, and husband's retirement accounts. After the parties separated, wife lived with her parents and paid them rent of $400 per month, reducing her monthly expenses to essentially break even with her income of about $4000 per month. Husband earned about $8333 per month with expenses totaling about $5450 per month,

---

[2]    In its decision on the merits, the court considered whether husband had presented any competent evidence of wife's future inheritance prospects and concluded that he did not. The court acknowledged that husband's inability to offer any evidence as to the value of the trust assets was a result of the court's decision on the discovery motion. On appeal, husband does not separately challenge the trial court's conclusion that he had not presented any evidence as to the contents of the trust to support a reasonable prediction of wife's access to the trust, if any.

not including contributions to savings or retirement accounts. Husband did not pay wife any support after the parties separated.

¶ 23. With respect to property division, the trial court initially divided the marital estate roughly evenly between the parties. The court's property-division analysis did not end there, however. The court explained:

> The court has found that [wife's] debt exists largely if not entirely because [husband] has not supported her in any way other than providing her health insurance coverage since she left the marital home a year and a half ago. The court concludes below that [husband] should have been paying [wife] support of $1000 a month since she left the marital home. The court therefore awards [wife] the lump sum of $18,000 in cash in additional property in lieu of a retroactive award of spousal maintenance.

Based on the parties' eighteen-year marriage, the gross disparity of health between them, wife's reasonable expenses and husband's ability to afford spousal maintenance, and husband's future earning prospects, the court awarded spousal maintenance to wife of $1200 per month for twelve years. The court acknowledged that this amount was less than the $1300 per month suggested by the guidelines.

¶ 24. On appeal, husband challenges only the $18,000 lump-sum award. He argues that the court abused its discretion in making the award, described as an award of "cash in additional property in lieu of a retroactive award of spousal maintenance," because wife never requested temporary spousal maintenance. We conclude that the trial court's award to wife of a lump-sum payment as part of its property division award was well within its discretion, that the court's order did not offend husband's due-process right to notice, and that any error by the court in characterizing the challenged $18,000 lump-sum award as a payment in lieu of a retroactive award of temporary maintenance is harmless.

¶ 25. Putting aside the label the court assigned to the lump-sum award, an adjustment to an otherwise equal property division award on account of the court's finding that wife was in debt because she received minimal support from husband during the year and a half preceding the final

divorce hearing was well within its discretion. The superior court's principal statutory obligation is to distribute marital property "equitably," see 15 V.S.A. § 751(a), but we have recognized that this division "is not an exact science and does not always lend itself to a precise mathematical formula; all that is required is that such distribution be equitable." Victor v. Victor, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982). We have also emphasized that "equitable" does not necessarily mean "equal." Jaro v. Jaro, 2018 VT 105, ¶ 15, 208 Vt. 391, 198 A.3d 1270.

¶ 26. The trial court's decision to adjust an otherwise equal property division to account for the parties' vastly different incomes and abilities to meet their reasonable expenses post-separation was well within its broad discretion. Its decision to quantify that adjustment by viewing it as $1000 for each of the eighteen months of separation was likewise permissible, given the court's findings that husband's monthly income exceeded his expenses by over $2800 per month; wife's monthly income barely covered her reduced monthly expenses during that period, and was $1000 short of the reasonable expenses she would have incurred had she not moved in with her parents; and wife fell into debt as a result of her limited income during that time. Husband does not contend otherwise, but instead argues that we should reverse the award on account of inadequate notice to husband.

¶ 27. We conclude that the court's order did not fall outside of the scope of defendant's notice. Husband is right that we have reversed spousal-maintenance awards where the obligor had no notice of the possibility of a spousal-maintenance award, but our case law has limited those holdings to cases in which a genuine absence of notice has unfairly prevented a party from presenting relevant evidence and arguments. In this case, through wife's divorce complaint and testimony at trial, husband had sufficient notice that wife was seeking spousal maintenance, and that she sought a lump-sum cash award to help her get started following the divorce.

¶ 28. In cases where a party has had no notice of a claim for spousal maintenance, and thus no opportunity to present evidence relevant to such a claim, we have reversed awards of spousal maintenance. In Nichols v. Nichols, this Court reversed a maintenance award to the wife

11

and remanded the matter for a hearing on maintenance because the wife never requested spousal maintenance. 133 Vt. 370, 371, 340 A.2d 73, 74 (1975). In that case, on the pre-printed divorce complaint form she filed, the wife struck maintenance from the list of claims to be considered; she never asked for maintenance subsequently, and the transcript contained no indication that the court had considered maintenance as an issue at any point in the divorce proceedings. We remanded because "the defendant was given no notice or an opportunity to be heard on the issue of alimony." Id.; see also Lalumiere v. Lalumiere, 149 Vt. 469, 544 A.2d 1170 (1988) (reversing and remanding spousal-maintenance award on account of lack of notice where wife never requested spousal maintenance and explicitly stated that she was seeking only visitation rights and a reasonable split in marital property), superseded in part by statute, 15 V.S.A. § 751, as recognized in Casavant v. Allen, 2016 VT 89, ¶ 19 n.6, 202 Vt. 606, 151 A.3d 1233.

¶ 29.    But we have upheld maintenance awards against challenges based on Nichols or Lalumiere where there is some indication in the record that the obligor had adequate notice of an issue to present relevant evidence and be heard. For example, in Watson v. Watson, 2003 VT 80, ¶¶ 7-8, 175 Vt. 622, 833 A.2d 869 (mem.), we rejected the husband's challenge to the trial court's award of permanent spousal maintenance where wife's proposed findings requested a lump-sum payment in lieu of maintenance and did not mention permanent maintenance. In that case, wife requested spousal maintenance in her divorce complaint and her counsel informed the court that she was seeking a permanent maintenance award. Before the close of evidence, the court noted that there was no place from which to take a lump-sum payment, and that in the absence of a way to fund a lump-sum payment, the court would be looking to spousal support. We concluded that the husband had adequate notice of the claim and affirmed. Id.

¶ 30.    Similarly, in Nevitt v. Nevitt, we upheld an award of maintenance even though the wife did not specifically request maintenance in her pleadings, where she sought "other relief as may be appropriate" in a memorandum submitted to the court and both parties consented to bifurcating the proceeding and resolving noncustody issues, including maintenance, at a later

hearing. 155 Vt. 391, 397-98, 584 A.2d 1134, 1138-39 (1990); see also Wood v. Wood, 143 Vt. 113, 117-18, 465 A.2d 250, 252-53 (1983) (rejecting husband's claim that wife waived her right to maintenance by stating on cross-examination that she was seeking only child support, where wife requested and received temporary maintenance, both sides put on testimony at trial regarding ongoing maintenance, and wife's exhibits and requests to find sought specific weekly payments).

¶ 31. In this case, husband was not denied notice or an opportunity to be heard on the issues of maintenance and wife's request for a lump-sum cash award, and his argument that he was "blindsided" by the award is unpersuasive. In the divorce complaint, wife requested a division of property, spousal maintenance, court costs, and attorney's fees. At the final divorce hearing, wife testified that she was requesting that the court award her a lump sum as part of either a maintenance award or the property division to help her get started in her new house. Further, the court directly asked husband if he was aware that his wife was requesting an alimony award, to which he responded, "Yes." The court then asked husband, "Are you acceptable to the notion of paying alimony to [wife]?" Husband responded, "What's fair, yes." Wife further indicated in an admitted exhibit and in the proposed final order that she was seeking $50,000 as a lump sum for partial payment of spousal support. In the proposed final order, wife also sought $1500 in monthly spousal maintenance over a period of fifteen years beginning January 1, 2020. In light of the above, husband had ample notice of the potential scope of the court's order, and he was not prevented by a lack of notice from presenting relevant evidence or arguments.

¶ 32. The absence of an "expansive request" for general relief in wife's complaint does not change our analysis. Wife used a printed form divorce complaint, checking all the boxes under "Request for Relief" except those related to children because the parties had no children. The pre-printed court form did not include a checkbox for "such further relief as seems just." Cf. Bero v. Bero, 134 Vt. 533, 534-35, 367 A.2d 165, 167 (1976) (upholding award in lieu of alimony where wife had not requested it but did request "such further relief as seems just"). Although an expansive request for "such further relief as seems just" may support a conclusion that a party is

13

on notice of the breadth of potential claims, it is not essential to establishing that husband had adequate notice in this case.

¶ 33.   Any error in the way the court framed its award is, on this record, harmless. We do not understand the court's statement that husband "should have been paying wife support of $1000 a month since she left the marital home" to suggest that husband literally failed to make some payments that were due, or even that wife had an outstanding request for temporary support in that amount. Rather, we understand the court's statement to have been an effort to explain its rationale in calculating the lump sum transfer that it ordered. Likewise, we conclude that given the court's expressed reasoning for its adjustment to the property division award, any error in the court's description of the award as "retroactive . . . spousal maintenance" is harmless.[3]

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[3] We do not suggest that an award of spousal maintenance retroactive to the date of filing would necessarily be error. Cf. Chaker v. Chaker, 155 Vt. 20, 30 n.1, 581 A.2d 737, 743 n.1 (1990) (declining to decide whether a court can issue a maintenance award retroactive to date of filing and overriding temporary maintenance order that had been in effect during that period).

14