VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-010



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JULY TERM,   2024

| | |
|---|---|
| Katie Orost v. Jay Orost\* | } APPEALED FROM: |
| | } Superior Court, Lamoille Unit, |
| | } Family Division |
| | } CASE NO. 147-10-17 Ledm |
| | Trial Judge: Robert R. Bent (Ret.) |

In the above-entitled cause, the Clerk will enter:

Defendant appeals the trial court's division of marital assets in its final divorce order. We affirm.

After a two-day hearing in August 2023, the trial court issued a written order in which it made the following findings. Plaintiff is forty-three years old, and defendant is sixty-two years old. They have four children together.

Defendant and his first wife adopted plaintiff and her sister when they were little. Defendant began sexually abusing plaintiff when she was ten years old and continued to do so throughout her adolescence. When plaintiff was eighteen years old, defendant impregnated her. The child was born in 2000 and defendant and his first wife initially held her out as their own. Defendant later divorced his first wife and in 2004, he married plaintiff in Florida, which permitted such a union. The parties went on to have three more children.

Defendant began abusing K., the parties' eldest daughter, around the time she turned ten years old. When K.'s younger sister began to mature, K. noticed defendant looking at her and directing where she might undress. K. worried that defendant would abuse her sister. She reported defendant's abuse to police. K.'s friend A.S. also reported that defendant sexually touched her when she stayed at the parties' house.

In 2017, defendant was charged with multiple counts of sexual assault and lewd and lascivious conduct for his conduct toward K. and her friend A.S. He has been incarcerated since that time. In January 2022, he was convicted of two counts of sexual assault against a minor, two counts of aggravated repeated sexual assault, five counts of lewd and lascivious conduct with a child, and one count each of lewd and lascivious conduct, domestic assault, and obstruction of justice. Although defendant had not yet been sentenced at the time of the final

divorce hearing, the family division found it likely based on the nature of the charges that he would spend the rest of his life in prison.

Defendant worked for years for IBM and was earning about $50,000 annually when he was incarcerated. He had several 401(k) retirement accounts from his work for IBM and its successor, GlobalFoundries. Some of those accounts were used for legal bills and child support. He continued to own $81,000 in a Prudential IRA and $86,000 in a Fidelity IRA. At the time of the final divorce hearing, defendant had recently suffered a brain bleed and stroke. He had paralysis in his hands and used a walker.

Plaintiff had a college business degree. She was employed as an administrator and made about $100,000 per year. She owned multiple retirement accounts, which were worth approximately $289,000 in total.

During the marriage, the parties lived in the home defendant and his first wife had occupied in Johnson, which was part of his family's farm. The house sits on 0.9 acres. The parties also own an adjoining 9.1-acre parcel, which defendant purchased from his siblings after their parents died. The real property was worth about $460,000 and was subject to a mortgage of $80,000. The property had a solar array that generated about $2600 per year in income.

The court considered the factors set forth in 15 V.S.A. § 751(b) in fashioning its property award. The court found that this was a long-term marriage. The marital real estate, which was the parties' largest asset, was acquired primarily through defendant or his family. Both parties had contributed to maintenance and other costs during the marriage. Defendant had no income and was in relatively poor health, while plaintiff was in good health and had a good income. However, the court found that defendant's future financial needs were very low because he would be incarcerated for years and possibly for the rest of his life. The court also found that defendant's conduct had diminished the marital estate due to the need to pay his legal expenses. The court denied defendant's request to be awarded the 9.1-acre parcel. The court explained that defendant was unlikely to be released and had health issues that made independent living improbable, and that it would be inequitable to allow him to live next to his victims.

The court then considered the last factor, the merits of the parties. The court found that defendant's conduct towards his minor daughter had directly harmed the family. The court also faulted defendant for his conduct toward plaintiff, stating that defendant's "misconduct against his family is marital and personal fault of the highest order."

The court therefore awarded plaintiff most of the marital assets, including the real property and associated debt, plaintiff's accounts, and defendant's Fidelity IRA account. It awarded defendant his Prudential IRA account, any bank accounts held solely in his name, and certain personal property. It declined to award spousal maintenance, reasoning that plaintiff had been left solely responsible to care for the parties' children without assistance from defendant and defendant's needs would be met by the Department of Corrections and the assets he had been awarded. The court awarded sole legal and physical rights and responsibilities for the parties' minor children to plaintiff. It ordered defendant to have contact with them by written correspondence only after successful treatment for pedophilia.

Defendant filed a motion to alter or amend the judgment, arguing that there was no evidence that he abused plaintiff or coerced her into marriage or that he would be incarcerated for the rest of his life, that the testimony of his daughter and her friend was inconsistent with

their testimony at defendant's criminal trial, and that his misconduct did not justify awarding his Fidelity account and the 9.1-acre parcel to plaintiff. The court denied the motion, concluding that the findings were supported by the evidence, and noting that defendant had recently been sentenced to serve at least nine years and up to life in prison. This appeal followed.

Defendant first argues that there was no evidence to support the court's findings that he sexually abused plaintiff or coerced her into marriage as his adoptive daughter. "On review, we will uphold the trial court's findings unless they are clearly erroneous, meaning that there is no credible evidence to support them." Peralta v. Brannan, 2020 VT 100, ¶ 21, 213 Vt. 493. Plaintiff testified at the final hearing that defendant began masturbating with her when she was nine years old, that he started having sex with her when she was eleven, and that the sex continued as she grew older. She further testified that when defendant proposed marriage to her, she agreed because she needed to be there for her child and did not feel she had a choice in the matter. She testified that defendant exercised total control over her social and sexual life. This testimony amply supports the court's findings. Defendant essentially claims that plaintiff was not credible in her testimony. However, "it is the exclusive role of the trial court to assess the credibility of witnesses and weigh the evidence; we do not reweigh the evidence on appeal." Id. We therefore decline to disturb these findings.

Defendant next claims that the court erred in considering his tortious behavior in dividing the marital assets. We again see no error. The property-division statute lists "the respective merits of the parties" as a factor that the court may consider in dividing the marital estate. 15 V.S.A. § 751(b)(12). Evidence that one spouse sexually abused the other and their child falls within this category and is relevant to the property distribution even if fault is not the ground asserted for the divorce. The cases cited by defendant are inapposite, as they pertain to whether a tort claim can or must be joined with a divorce action. Cf. Ward v. Ward, 155 Vt. 242 (1990); Slansky v. Slansky, 150 Vt. 438 (1988). Plaintiff did not assert such a claim here, and defendant did not argue below that plaintiff was required to assert such a claim. Furthermore, defendant offers no authority to support his assertions that the family division should have waited to adjudicate the property division until his criminal trial concluded.

Finally, defendant argues that the court improperly weighed the statutory factors governing property division and ignored his contributions toward the marital estate. The family division "has broad discretion in fashioning a property award and in weighing the statutory factors." Felis v. Felis, 2013 VT 32, ¶ 30, 193 Vt. 555. "There is no specific formula for assessing these factors," and "all that is required is that the distribution be equitable." Casavant v. Allen, 2016 VT 89, ¶ 15, 202 Vt. 606 (quotation omitted). The family division has discretion to award more property to one party in a long-term marriage, provided that it gives a clear explanation for its decision. Lee v. Ogilbee, 2018 VT 96, ¶ 31, 208 Vt. 400. "The court need not specify the weight given to each factor[] but is required only to provide a clear statement as to what was decided and why." Molleur v. Molleur, 2012 VT 16, ¶ 15, 191 Vt. 202 (quotation omitted).

The family division explained the reasons for its decision to award plaintiff the bulk of the marital estate in this case. It acknowledged that most of the real estate was acquired through defendant or his family and that defendant made significant contributions in the form of money and labor toward the marital estate. It further found that defendant was in poor health and without income, while plaintiff was in good health and earned significant income. It found that these factors were outweighed by defendant's acts of sexual abuse toward plaintiff and their daughter, which harmed them, destroyed the family, and diminished the value of the marital

3

estate through legal expenses. The weight assigned to a party's fault "is an issue only the family court may decide." Slade v. Slade, 2005 VT 39, ¶ 14, 178 Vt. 540 (mem.). The family division acted well within its discretion in awarding plaintiff most of the assets given defendant's fault. See Leonard v. Leonard, 150 Vt. 202, 203 (1988) (affirming court's award of "virtually all the marital property" to wife where husband committed lewd and lascivious acts on wife's child).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice